IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CARD-MONROE CORP., ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: _____ |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| TUFTCO CORP. ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

Through counsel, Plaintiff Card-Monroe Corp. ("CMC") brings this lawsuit against Defendant Tuftco Corp. ("Defendant"), and alleges as follows:

## THE PARTIES

1. CMC is a Tennessee company with a principal place of business at 4841 Adams Road, Hixson, Tennessee 37343.

2. Upon information and belief, Defendant is a Delaware corporation with a principal place of business at 2318 Holtzclaw Avenue, Chattanooga, Tennessee 37408. Defendant has appointed The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801, as its agent for service of process.

## JURISDICTION AND VENUE

3. This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*.

4. This Court has subject matter jurisdiction over CMC's claims under, at least, 28 U.S.C. §§ 1331 and 1338.

5. This Court has personal jurisdiction over Defendant because Defendant has engaged in acts of infringement complained of herein in Tennessee and in this District. Such acts by Defendant cause injury to CMC within this District. The Court further has personal jurisdiction over Defendant because Defendant is a resident of this District.

6. The United States District Court for the Eastern District of Tennessee is the appropriate venue for this action pursuant to, at least, 28 U.S.C. §§ 1391 and 1400(b).

## FACTS

7. CMC is a leading manufacturer of tufting machines and equipment. CMC has a long history of technological innovation in the tufting industry, and its contributions have literally changed the way carpet is made.

8. CMC developed an innovative system and method, known in the industry as "ColorPoint™," for forming tufted articles, including tufts of multiple different color yarns having enhanced patterned appearance and density. In November 2013, CMC's ColorPoint™ system was awarded the "Spirit of Innovation" award by the Chattanooga Chamber of Commerce.

9. On March 27, 2012, United States Patent No. 8,141,505 ("the '505 Patent"), entitled "Yarn Color Placement System," was duly and legally issued by the United States Patent & Trademark Office. A true and correct copy of the '505 Patent is attached hereto as **Exhibit A**.

10. On January 29, 2013, United States Patent No. 8,399,989 ("the '989 Patent"), entitled "Stitch Distribution Control System for Tufting Machines," was duly and legally issued by the United States Patent & Trademark Office. A true and correct copy of the '989 Patent is attached hereto as **Exhibit B**.

11. On July 15, 2014, U.S. Patent No. 8,776,703 ("the '703 Patent"), entitled "Yarn Color Placement System," was duly and legally issued by the United States Patent & Trademark Office. A true and correct copy of the '703 Patent is attached hereto as **Exhibit C**.

12. CMC is the owner by assignment of all right, title and interest to the '505 Patent, the '989 Patent, and the '703 Patent, including all rights to bring actions and recover damages for infringement thereof.

13. The '505 Patent, the '989 Patent, and the '703 Patent are directed to improved machines and methods for forming patterned, tufted fabrics, which can be formed with multiple colors and with an enhanced patterned appearance and density.

14. Defendant is a competitor of CMC and is engaged in the business of manufacturing, selling and distributing tufting machinery and related equipment to the carpet industry.

15. Defendant has and is currently making, using, selling, importing, distributing and/or offering for sale tufting machines, including, at least, the "Colortuft," and now the "iTuft c," thereby infringing at least one claim of the '505 Patent, the '989 Patent, and the '703 Patent.

16. On December 12, 2012, CMC sent Defendant a letter notifying Defendant of the '505 Patent and Defendant's infringement thereof. On January 30, 2013, CMC sent Defendant a letter notifying Defendant of the '989 Patent and Defendant's infringement thereof. Defendant also has had knowledge of the '703 Patent since its issuance date of July 15, 2014, and of the

- 3 -

Case 1:14-cv-00292-HSM-WBC   Document 1   Filed 10/07/14   Page 3 of 8   PageID #: 3

patent application or publication that led to the '703 Patent since before its issuance date, at least because Defendant and/or its counsel or other representatives have been monitoring the progress of the patent applications related to the '505 Patent and '989 Patent, as reflected in correspondence received from Defendant's counsel on March 14, 2014.

17. Upon information and belief, after receiving notice from CMC, Defendant misrepresented its intention to redesign its infringing machines and methods in order to conceal and prolong its infringement.

18. Upon information and belief, after receiving notice from CMC, Defendant misrepresented the characteristics and operation of its infringing machines and methods in order to conceal and prolong its infringement.

19. Upon information and belief, after receiving notice from CMC, Defendant changed the name of its infringing systems from "Colortuft" to "iTuft c" to give the impression that the characteristics and operation of its infringing machines and methods had changed and to conceal and prolong its infringement.

## COUNT ONE
### (Infringement of the '505 Patent)

20. CMC incorporates by reference the allegations in the foregoing paragraphs, as if stated fully herein.

21. CMC owns all right, title and interest to the '505 Patent.

22. Defendant has directly infringed and continues to infringe the '505 Patent by making, importing, using, offering for sale, and/or selling in interstate commerce certain tufting machines, systems, and methods, including at least the "iTuft c" and "ColorTuft" tufting systems, that infringe at least one claim of the '505 Patent, without the authorization, consent, or permission of CMC.

- 4 -

23. As detailed above, Defendant has knowledge of and is aware of the '505 Patent. Upon information and belief, Defendant's acts of infringement have been willful, undertaken with full knowledge of the '505 Patent and the subject matter claimed therein, and performed despite an objectively high likelihood that its actions constituted infringement of a valid patent.

24. Defendant's infringement has caused and will continue to cause irreparable harm to CMC unless Defendant's infringing activities are preliminarily and permanently enjoined by this Court.

25. Defendant's infringement has also caused monetary damages to CMC in an amount to be determined at trial.

## COUNT TWO
### (Infringement of the '989 Patent)

26. CMC incorporates by reference the allegations in the foregoing paragraphs, as if stated fully herein.

27. CMC owns all right, title and interest to the '989 Patent.

28. Defendant has directly infringed and continues to infringe the '989 Patent by making, importing, using, offering for sale, and/or selling in interstate commerce certain tufting machines, systems, and methods, including at least the "iTuft c" and "ColorTuft" tufting systems, that infringe at least one claim of the '989 Patent, without the authorization, consent, or permission of CMC.

29. As detailed above, Defendant has knowledge of and is aware of the '989 Patent. Upon information and belief, Defendant's acts of infringement have been willful, undertaken with full knowledge of the '989 Patent and the subject matter claimed therein, and despite an objectively high likelihood that its actions constituted infringement of a valid patent.

30. Defendant's infringement has caused and will continue to cause irreparable harm to CMC unless Defendant's infringing activities are preliminarily and permanently enjoined by this Court.

31. Defendant's infringement has also caused monetary damages to CMC in an amount to be determined at trial.

## COUNT THREE
### (Infringement of the '703 Patent)

32. CMC incorporates by reference the allegations in the foregoing paragraphs, as if stated fully herein.

33. CMC owns all right, title and interest to the '703 Patent.

34. Defendant has directly infringed and continues to infringe the '703 Patent by making, importing, using, offering for sale, and/or selling in interstate commerce certain tufting machines, systems, and methods, including at least the "iTuft c" and "ColorTuft" tufting systems, that infringe at least one claim of the '703 Patent, without the authorization, consent, or permission of CMC.

35. As detailed above, Defendant has knowledge of and is aware of the '703 Patent. Upon information and belief, Defendant's acts of infringement have been willful, undertaken with full knowledge of the '703 Patent and the subject matter claimed therein, and despite an objectively high likelihood that its actions constituted infringement of a valid patent.

36. Defendant's infringement has caused and will continue to cause irreparable harm to CMC unless Defendant's infringing activities are preliminarily and permanently enjoined by this Court.

37. Defendant's infringement has also caused monetary damages to CMC in an amount to be determined at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, CMC hereby demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, CMC respectfully seeks the following relief:

1. A judgment in favor of CMC on the claim of patent infringement, including judgment that the '505 Patent, the '989 Patent, and the '703 Patent have been infringed by Defendant;

2. A judgment that Defendant's infringement has been willful;

3. A preliminary and permanent injunction enjoining and restraining Defendant and its officers, agents, affiliates, servants, and employees, and all persons in active concert or participation with it from:

    a. Infringing the '505 Patent, the '989 Patent, and the '703 Patent; and

    b. Any importation, manufacture, assembly, advertising, promotion, offer for sale, sale, purchase, distribution, movement or transfer, or any other involvement with products that infringe the '505 Patent, the '989 Patent, and the '703 Patent;

4. An order that Defendant pay to CMC such damages as CMC has sustained as a consequence of Defendant's infringement, including lost profits or a reasonable royalty;

5. A declaration that this case is an "exceptional case" within the meaning of 35 U.S.C. § 285 and the awarding of reasonable attorneys' fees to CMC;

6. An award of interest, costs, and expenses to CMC; and

7. An award of such other and further relief as the Court deems just and proper.

Respectfully submitted, this 7th day of October, 2014.

*Joseph R. White by WFT with permission*

W. Ferber Tracy (BPR No. 454)
Joseph R. White (BPR No. 13459)
Joseph Alan Jackson II (BPR No. 30203)
SPEARS, MOORE, REBMAN & WILLIAMS P.C.
801 Broad Street, 6th Floor
Pioneer Building
Chattanooga, TN 37402
Telephone: (423) 756-7000
Fax: (423) 756-4801
E-mail: wft@smrw.com
jrw@smrw.com
jaj@smrw.com

John F. Morrow, Jr., *pro hac vice*
N.C. Bar. No. 23382
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3584
Fax: (336) 733-8429

D. Scott Sudderth (*pro hac vice* to be filed)
GA Bar No. 690670
Preston H. Heard (*pro hac vice* to be filed)
GA Bar No. 476319
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 872-7000
Fax: (404) 879-2966

*Attorneys for Plaintiff Card-Monroe Corp.*